Filed 10/28/22 In re A.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | B313333 (Los Angeles County Super. Ct. No. 20CCJP05365A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff, v. M.R., Defendant and Appellant; H.B., Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge. Dismissed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant M.R.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Respondent H.B.

No appearance for Plaintiff.

_____

In October 2020, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300[1] seeking the juvenile court's exercise of dependency jurisdiction over A.R. (born Oct. 2010) and K.B. (born Feb. 2013).[2] The petition alleged that K.B.'s presumed father, defendant and respondent H.B. (father),[3] sexually abused A.R. and physically abused both minors; that father and minors' mother, defendant and appellant M.R. (mother), had a history of engaging in domestic violence in the presence of minors; and that father abused marijuana. The

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    We refer to A.R. and K.B., collectively, as minors.

[3]    H.B. is not A.R.'s father. A.R.'s alleged father did not appear in the proceedings below and is not a party to this appeal.

2

juvenile court dismissed the petition with prejudice at the jurisdiction hearing held in May 2021.

Mother purports to appeal from the dismissal of the dependency petition. We conclude that she lacks standing and, therefore, dismiss the appeal.

## BACKGROUND

*Prior Juvenile Dependency Case*

In 2014, the juvenile court sustained a section 300 dependency petition on behalf of minors, which alleged that mother and father had a history of engaging in violent altercations in minors' presence. In August 2015, the juvenile court terminated its jurisdiction with a custody order awarding mother sole physical custody of K.B., with mother and father sharing joint legal custody of K.B.

*Domestic Violence Restraining Order (DVRO)*

In April 2019, mother obtained a three-year DVRO protecting her from father. The same day, the family court[4] approved a stipulated custody agreement under which father received weekend visitation with K.B.

*Allegations of Sexual Abuse*

In August 2020, mother was informed by an employee at A.R.'s daycare that A.R. had been found in a restroom with his

---

[4] We distinguish between the juvenile court and the family court, which serve different purposes. (*In re J.P.* (2020) 55 Cal.App.5th 229, 239–240.) "'The family court is established to provide parents a forum in which to resolve, inter alia, private issues relating to the custody of and visitation with children. . . . The juvenile court, by contrast, provides the state a forum to "restrict parental behavior regarding children, . . . and . . . to remove children from the custody of their parents or guardians."' [Citation.]" (*Id.* at p. 240.)

3

penis in another boy's mouth. When mother questioned A.R., he disclosed that more than four years earlier, father had forced him to perform oral sex. Father told A.R. that he "would get whooped" if he told mother. A few days later, A.R. repeated his account regarding father to a DCFS social worker. Father denied the allegations.

In September 2020, the family court modified the existing custody and visitation order and granted mother sole legal and physical custody of K.B., with father receiving monitored visitation.

*Dependency Petition*

In October 2020, DCFS filed a dependency petition seeking the juvenile court's jurisdiction over A.R. pursuant to section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling), and over K.B. pursuant to section 300, subdivisions (a), (b)(1), and (j).

Counts b-1, d-1, and j-1 alleged that father sexually abused A.R. by forcing A.R. to orally copulate father's penis while father choked A.R. Father threatened to strike A.R. if he disclosed the sexual abuse to mother.

Counts a-1, b-2, and j-2 alleged that mother and father had a history of engaging in violent altercations in minors' presence. On prior occasions, father struck mother on the face and body. In 2018, father forced his way into mother's home, pushed mother, and prevented her from leaving. When mother jumped out of a window, father chased her down the street, tackled her, and struck her on the face, causing injury. Father had previously choked, kicked, and threatened to kill mother. Father had multiple convictions for inflicting corporal injury upon a spouse/cohabitant (Pen. Code, § 273.5, subd. (1)).

4

Counts a-2, b-3, and j-3 alleged that father physically abused A.R. by striking A.R., threatening to strike A.R., and choking A.R. during sexual abuse. Counts a-3 and b-4 alleged that father physically abused K.B. by striking her.

Finally, count b-5 alleged that father had a history of substance abuse and was a daily abuser of marijuana. Mother knew of father's substance abuse and failed to protect K.B. by allowing father to have unlimited access to the child.

*Jurisdiction Hearing*

The jurisdiction hearing was held on May 18, 2021. The evidence admitted by the juvenile court included DCFS reports and the transcript and video recording of a January 2021 forensic interview of A.R. regarding the sexual abuse allegations. The court entertained oral argument from mother's counsel, father's counsel, A.R.'s counsel, and K.B.'s counsel. Mother's counsel asked the court to dismiss count b-5 regarding father's alleged marijuana abuse and mother's failure to protect K.B. from it.

Over DCFS's objection, the juvenile court dismissed the dependency petition in its entirety based on insufficient evidence.

Regarding the allegations of domestic violence between father and mother, the juvenile court observed that the last incident had occurred two years earlier and thus the court was "hard pressed to find there [wa]s a current risk that this could cause injury or somehow affect" minors. With respect to the allegations that father physically abused A.R. and K.B., the court noted that father was not A.R.'s parent and that K.B. had consistently denied that father had abused her. Regarding father's alleged substance abuse, the court stated that mother and minors denied ever seeing father smoke marijuana.

The sexual abuse count "concern[ed]" the juvenile court "like no other." The court explained that it had "spent a lot of time watching th[e] forensic interview[,]" "carefully watched [A.R.]'s body language[,]" and "listened to every word that he said." The court stated: "To sustain an allegation like this, I know that it is only preponderance of the evidence, but I have a horrible feeling in my gut that it is not true."

*Appeal*

Mother filed a timely notice of appeal from "[a]ll [j]urisdictional and [d]ispositional findings on May 18, 2021[.]"[5]

## DISCUSSION

Mother contends that the evidence of father's history of domestic violence compelled the juvenile court to assume dependency jurisdiction under section 300, subdivision (b)(1). Although the dismissal of a juvenile dependency petition is an appealable order (*In re Nicholas E.* (2015) 236 Cal.App.4th 458, 463; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 195–197 (*Sheila B.*)), we do not reach the merits of mother's argument because we conclude that she lacks standing to challenge the order.

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected

---

[5]     Neither DCFS nor minors appealed from the order dismissing the dependency petition. DCFS filed a letter in this court stating that because it had argued below in support of the juvenile court sustaining the petition in its entirety, it was "not the proper respondent" and would not file a respondent's brief.

6

by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings. [Citation.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236.) Because lack of standing is a jurisdictional defect, an appeal is subject to dismissal if the appellant does not have standing. (*In re B.S.* (2021) 65 Cal.App.5th 888, 893; *In re D.M.* (2012) 205 Cal.App.4th 283, 294.)

Citing *In re Lauren P.* (1996) 44 Cal.App.4th 763, 770 (*Lauren P.*) and *Allen M. v. Superior Court* (1992) 6 Cal.App.4th 1069, 1075 (*Allen M.*), mother asserts that "[a] parent who takes the position that juvenile court intervention is necessary has standing to appeal the dismissal of a dependency petition."[6]

In *Lauren P.*, the mother appealed from the juvenile court's dismissal of a dependency petition alleging that her daughter's father had sexually abused the child. (*Lauren P.*, *supra*, 44 Cal.App.4th at p. 765.) In concluding that the mother was "sufficiently aggrieved by the dismissal order to have standing to appeal from it" (*id.* at p. 771), the Court of Appeal explained: "[T]he public agency is not the only party whose interest is affected by the dismissal of a dependency petition. Any parent who takes the position that dependency jurisdiction is warranted is aggrieved by dismissal of the petition. Just as a parent must be permitted to present evidence and to argue in opposition to

---

[6] Father did not respond to this contention in his respondent's brief or otherwise address mother's standing to appeal. We are, however, "undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not[.]" (*Hibernia Sav. & Loan Soc. v. Farnham* (1908) 153 Cal. 578, 584.)

7

dismissal below, so such a parent must be allowed to appeal from a dismissal on the merits.  [¶]  The state's exclusive power to initiate a dependency proceeding does not equate to an exclusive interest in the outcome of the proceeding. . . .  [The mother] had a natural interest in obtaining the state's protection for her daughter against future sexual abuse.  Dismissal of the petition injuriously affected this interest." (*Id.* at pp. 770–771.)  The Court of Appeal also relied on the premise that the dismissal of the petition "would be res judicata" and "[a] party who would be bound by res judicata is sufficiently aggrieved to assert appellate rights.  [Citations.]" (*Id.* at p. 771.)

The mother in *In re Carissa G.* (1999) 76 Cal.App.4th 731 (*Carissa G.*) also purported to appeal from an order dismissing a juvenile dependency petition alleging sexual abuse by the father. Disagreeing with *Lauren P.*, the Court of Appeal concluded that the mother lacked standing to challenge the order and dismissed the appeal.  (*Carissa G.*, *supra*, at pp. 733–734, 738.)  The Court of Appeal reasoned:  "While parents are entitled to appear and participate in a juvenile dependency action, the proceeding is initiated by the state, under the theory of *parens patriae*, to protect a minor from abuse or neglect as defined by section 300. [Citations.]  Thus, the mere fact a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not alone constitute a sufficient reason to establish standing to challenge an adverse ruling on it." (*Carissa G.*, *supra*, at p. 736.)

The Court of Appeal in *Carissa G.* also observed that the mother was not barred from seeking relief in a family law proceeding regarding the alleged sexual abuse.  (*Carissa G.*, *supra*, 76 Cal.App.4th at p. 736.)  Res judicata would not apply

8

because an identical issue would not exist: "'[T]he "issues" before the family law court and juvenile court can never, in fact, be "identical," even if some or all of the facts of abuse or neglect adduced in the two proceedings are the same, because of the important differences between the purposes and operations of the two courts, and the state's overriding concern for the protection of the children.' [Citations.]" (*Ibid.*)

We find the reasoning of *Carissa G.* more persuasive and conclude that mother does not have standing to challenge the dismissal of the dependency petition.[7] Mother's *personal* rights and interests were not "injuriously affected by the decision in an immediate and substantial way[.]" (*In re K.C.*, *supra*, 52 Cal.4th at p. 236; see also *In re J.T.* (2011) 195 Cal.App.4th 707, 717 ["Without a showing that the party's personal rights are affected by a ruling, the party does not establish standing"].) The dismissal neither altered mother's custody of minors nor did it affect her ability to raise her concerns about her own or minors' safety in a future family law proceeding.[8] (See *Carissa G.*, *supra*,

---

[7] The other case relied upon by mother, *Allen M.*, *supra*, 6 Cal.App.4th 1069, is inapposite and does not support mother's claim of standing. *Allen M.* considered whether a social services agency "has an absolute right to dismiss a dependency petition over the objection of the minor." (*Id.* at p. 1071.) The Court of Appeal concluded that it was still incumbent on the juvenile court to "determine whether dismissal is in the interests of justice and the welfare of the minor." (*Ibid.*)

[8] By its express terms, the DVRO mother obtained in April 2019 protecting her from father expired on April 15, 2022. The record before us does not disclose whether mother sought a renewal of the DVRO. (See Fam. Code, § 6345, subd. (a) [DVRO "may be renewed, upon the request of a party, either for five

76 Cal.App.4th at p. 736 ["Nor is a parent left without a remedy in this situation.  Issues concerning custody and visitation can also be dealt with in a family law proceeding"].)

Mother's lack of standing warrants dismissal of her appeal. (See *In re B.S.*, *supra*, 65 Cal.App.5th at p. 893; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 294.)[9]

---

years or permanently, without a showing of further abuse since the issuance of the original order"].)

[9]      Even if we found that mother had standing, we would affirm the juvenile court's order dismissing the dependency petition.  We review such an order for substantial evidence. (*Sheila B.*, *supra*, 19 Cal.App.4th at p. 199.)  Where, as here, "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.] Specifically, the question becomes whether the . . . evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'  [Citation.]"  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  Here, the evidence regarding domestic violence was not "'uncontradicted and unimpeached'" (*In re I.W.*, *supra*, at p. 1528), as minors both denied that they had seen father and mother hit each other and father denied the allegations.  Given the lack of evidence that father had engaged in domestic violence for at least two years prior to the jurisdiction hearing, we cannot say that the juvenile court was compelled, as a matter of law, to find that a current risk to minors existed such that dependency jurisdiction was warranted.

**DISPOSITION**

The appeal is dismissed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

11